May it please the court, counsel. My name is Christopher Roach and I represent the estate of Michael Godawa. I'd actually request to have two minutes of rebuttal time at this point. On June 23, 2012, Michael Godawa was fatally shot and killed by defendant officers. On that night, Michael Godawa went to the Finish Line Bar and Grill in Ellesmere, Kentucky. That same night, Officer Byrd was acting in his capacity as a police officer for the Ellesmere Police Department. In the early morning hours after Officer Byrd arrived at the Finish Line Bar and Grill, he received a report of potential underage drinking from one of the workers at the bar. Later on in the night, or not too much later after that, he witnessed Michael Godawa move his vehicle from the back of the parking lot to the front of the parking lot, probably about three or four spaces away from the exit. Was Mr. Godawa specifically identified by the caller as one of the people engaged in the underage drinking? I believe that he was identified as the potential underage drinker, and I think that the actual report included the possibility that Michael would have been drinking in the parking lot. That stop that occurred at this point after witnessing Michael move his vehicle to the front of the parking lot, Officer Byrd conducted a stop. During that stop, which you can see in the lapel video that Officer Byrd was wearing, there was a point in time Michael did try to say that he wasn't drinking, that the beer in the car wasn't his, that it was his girlfriend's. He eventually says that it is his and eventually agrees to a preliminary breathalyzer test to be performed. During the entire encounter, during that encounter between Officer Byrd and Michael Godawa, Michael Godawa is clear, he's courteous, and even during Officer Byrd's deposition, he said that there was never a smell of alcohol or marijuana coming from the vehicle. As Officer Byrd walked back to his bike, which he had parked caddy corner to the back corner of Michael's car to radio for a PBT, Michael started his vehicle and he backed out of the parking spot. He did strike Officer Byrd's bicycle, and based on the testimony, it was basically akin to hitting it just hard enough for it to fall down. The only thing that was damaged on the bike was just the fact that the rear derailleur, which is simply the mechanism that moves the chain up and down that back gear spoke, so basically to make the bike either go faster or slower depending on how much effort that you use. As he backs up, striking that, Officer Byrd runs from the driver's side of the vehicle up towards the exit, and he's basically caddy cornered to the front passenger side door. It's at this point that Officer Byrd draws his weapon. He also has a flashlight, which you can see in the lapel cam, you can see that there's a flashlight that's actually shining in Michael's eyes as he's commanding Michael to stop. It is our position, the plaintiff's position, the appellant's position from this point that the movement by Michael wasn't any attempt to try to hurt Officer Byrd, that he was simply trying to get away. At some point, your client's car had some contact with the officer, and the question I would have is factually, what occurred there? Did your client move the vehicle to strike the officer, or did the officer initiate contact with the car because he was attempting to stop the vehicle? There seems to be some unclarity as to how the contact occurred. I know there were some issues watching the surveillance video footage. It is our position that it was Officer Byrd who was actually running, trying to hem Michael in by using his body and the other vehicles that were parked between where he was parking the exit to try to prevent him from coming out, and then it was actually Officer Byrd who ran into Michael's car. And the video shows that as Michael's pulling forward, the surveillance video, as Michael's pulling forward, he's actually pulling diagonally away from Officer Byrd, and Officer Byrd is running, walking towards the car. And the amount of damage that Officer Byrd had was, in his deposition, he said it was basically a scratch. He had sort of like a rug burn just below his knee. Well, how should or would our inquiry change if, in fact, Officer Byrd attempted to just block Mr. Gottwas' exit from the parking lot, as opposed to him running into Mr. Gottwas' car? Does the termination of one of those facts change our inquiry? I think it can in certain circumstances, and I think that that circumstance would typically be in the area where if Byrd was standing there not moving while Michael was moving at the same time, and then Michael struck him, I think that would be a different story, a different set of facts that could lead to a reasonable use of deadly force. But here, the amount of time, you're talking about a few feet, and Michael wasn't moving that quick, but still, once he's struck, I mean, once he's moving, he's still got to stop a car. And if Byrd is moving towards him, he's not necessarily going to be able to stop that car in time. The way that Byrd used his body was enough that it made it so that he couldn't necessarily prevent the contact at that point in time. So I think that that's at least a large reason. It's a much different situation than if Byrd was just standing in front of the exit. Clearly, he couldn't get through on either side, and Michael still tried to get away and struck him. You argue that Officer Byrd's actions were unreasonable under the current jurisprudence. What would a reasonable officer's actions have been in that same circumstance? Well, I mean, there's issue with trying to second-guess the actions in that. But, I mean, one of the simplest explanations or things he could have done, he had already called for backup for a PBT. He could simply have radioed in as soon as he started to flee that, you know, he's fleeing. You know, give him a description of the car. I mean, the other officers actually arrived at the scene at the place that Michael stopped as the car, as he was dying, prior to when Officer Byrd had arrived there. I guess part of the problem you have is that this Cass case says that the officer can try to block the fleeing vehicle with his body, right? Do you agree with that characterization? Yes, but there was the issue, though. I mean, the amount of time, though. I'm not talking about the facts. I mean, that is a fair – so that case says that, and then – so the officer's entitled to do that. And then, looking at the video, we think it's clear that the officer gets in front of at least part of the vehicle before the vehicle strikes him. So you agree that sort of the last clear chance lay with your client rather than the officer just sort of putting himself onto the car. What then is the analysis? I know that's not how you would view things, but if we did view it that way, is that fatal to your case, or do you still think, even in light of the Cass case, that somehow the officer has to just stand down after the contact with the vehicle? No, I mean, I don't think that there is – I think that if you interpret the video to mean that it can only be interpreted in that way, then I do think that that is a fatal issue to the case. I don't think there really is a – I appreciate your candor. I'm not saying it necessarily has to be read that way. But, I mean, I do believe that the video isn't – you deal with the software that was in place for the video and all that. There is relatively limited, but also at the same time, with the injury that Officer Byrd sustained, I think that there is a strong reasonable inference that could be made by any reasonable juror that it was actually Defendant Byrd who ran into Michael's vehicle as he was fleeing. There were a number of facts that – so under the Graham factors, the three Graham factors, the district court – you know, we – the plaintiff admitted that at the time that this occurred that he was attempting to flee. There's no argument against that. But there were also the other two factors, including the severity of the crimes that were committed or he thought could have been committed. Basically, the district court went along and used those crimes that were listed during the motion for summary judgment phase, which also contradict the deposition testimony of Defendant Byrd, in which I believe he said that the only real crime that he thought or could say that Michael had committed at that time besides the possibly being intoxicated was attempted murder on a police officer. You know, we – the plaintiff disagrees with that categorization entirely because I think that the intent from Michael's perspective through the video is clear, is that he wasn't trying to do anything besides to get away. And in finding – so in the district court, when it made that finding, it basically just did a one-sentence blurb that said, this is – you know, we believe that he could have committed four serious crimes, completely avoiding that deposition testimony from Defendant Byrd earlier. And then in also deciding that Officer Byrd thought that Michael was a serious threat of harm to himself or to others, they listed – the court basically listed eight separate facts. Number one was that they suspected that Michael was – or that Byrd suspected that Michael was intoxicated at the time. And I think that going through the lapel camera, you know, he was courteous, clear speech. He did find the beer on him, but there was no actual indication that there was any sort of real cognitive impairment with him. The other one was that he backed the car over the bicycle. I think, once again, there is no evidence showing that he actually backed over the bicycle. And, I mean, even just using common knowledge, if you were to back a car over a bicycle, the chances of it actually being usable is slim to none. And Officer Byrd was able to use his bicycle just minutes later to go to the scene of the crash, the final resting place. There's also the – Officer Byrd said that he was nearly struck by Michael. And, once again, I think it's one of those things that, you know, it's – you're backing out of space, so technically, yes, I mean, you could almost be hit by anybody if you're in close proximity. But I don't think that the nearly striking shows that he was acting recklessly, considering at the time that, you know, Officer Byrd still says that he wasn't driving recklessly fast through the parking lot when he was trying to leave. You know, I don't think that the inference necessarily should be drawn on that side of the case. Let's say – I know it's not this case, but let's say there's a case where it's clear that the driver's intoxicated. And, you know, so the officer pulls him over on the road, and as the officer goes back to his vehicle to do whatever they do back there, the guy – as he's walking back towards his vehicle, the guy starts to take off. Would an officer – do you know, under the case law, would an officer be authorized to start shooting at the drunk driver before he emerges back out into traffic? I'm pretty sure under the case law – I could be wrong. I know that there was the recent – there was a recent Supreme Court decision relatively close to that. I don't think that that would be the situation where just pulling a gun and firing would be considered reasonable force. You couldn't just gun down a drunk driver, I guess, to prevent him from getting back on the road. I mean, then you're also looking at the totality of circumstances. You know, what time is it? Are there a lot of other vehicles on the road? I mean, just being on the road doesn't necessarily mean that you're going to pose a serious threat of risk to harm to others. So you're not aware of any case law kind of in this factual scenario that I'm describing? Not – I mean, with just that – with just that factor, I mean, there are similar, but I couldn't really say anything in particular. Okay. Thank you. May it please the Court, Mr. Roach, Jeff Mando on behalf of the appellee, David Bird. The district court in this particular case correctly found that Officer Bird's use of deadly force was objectively reasonable under the undisputed material facts that were in this record. The Godawa estate had the burden of proof to show that Officer Bird's decision to fire that fatal shot was objectively unreasonable, and the estate failed to meet that burden. The district court applied the correct analysis in looking at all of the Graham v. Conner factors in ruling that the use of force was objectively reasonable in this particular case. The court first looked at – You know, the video is not clearly unambiguous, and one problem here seems to be that the district court did not construe the video or interpret it in the light most favorable to the plaintiff on summary judgment, which sort of creates a problem, speaking only for myself, for the entire case here. It wasn't clear from – not clear from the video that the plaintiff's decedent was trying to run the officer over. So, I mean, what do we do with that? The district court, when it looked at this record, this video record, and you can tell from its decision that it looked at this video record very closely because it referred to specific time stamps by the second in painstakingly analyzing this video, and it determined correctly from that video that David Bird, Officer Bird, after his bicycle had been struck, after he had nearly been struck when Mr. Michael backed out of that spot, and as he then stood in front of the – Godawa ordered him to stop five times with his gun drawn. The car is then seen advancing towards Officer Bird. You can then hear the loud crash when David Bird hits the hood of that car and rolls off, and within that second of landing on the ground makes that split-second decision to fire that shot at a person who had just tried to run him over and flee. There's no evidence – I'm curious whether he jumped on the car or whether Mr. Bird, Officer Bird, was struck by the car or whether he was trying to stop the car with his body, which would be two vastly different interpretations. In the record, Your Honor, there was also the testimony of David Bird who said that he was struck by the vehicle. The district court had the lapel cam video and the surveillance video. There were no witnesses. Not one witness was identified by the estate to say, Hey, I saw David Bird jump on the hood of that car. It was their obligation to do that. The decedent can't testify. Correct. We've got somebody hanging out in front of the bar. They don't happen to have that here. The officer's testimony only gets you so far in this procedural posture. It's a little bit different, I think, Your Honor. If I had moved for summary judgment on qualified immunity and then the court had denied that and I had taken interlocutory appeal, in this particular case the court looked at the evidence, I believe in a light most favorable to the Godawa estate, in concluding that the use of force was objectively reasonable or in the alternative that Officer Bird was entitled to qualified immunity, applying that test in this particular case. So there was, and this record reflects, that the Erlanger Police Department conducted an exhaustive investigation, interviewed any number of patrons and people who were outside that bar. It was the state's obligation to refute David Bird's testimony that Michael Godawa struck him with that vehicle as he then fled that parking lot. The video is very clear that within a second after striking Officer Bird, that car takes off. It doesn't calmly pull out of that parking lot. It takes off south on Dixie Highway. Officer Bird, at the time that he fired that shot, knows in his mind that he had just been hit by this car, that he was attempting to flee, there were bar patrons in the area, there was traffic on Dixie Highway. The immediacy of that threat to him at that particular time was very real and presented a clear and present danger to his safety and the safety of the other folks in that area and the motoring public. Under those circumstances, that use of force, that split-second decision he made, within the one to two seconds of coming off that car, that use of force was objectively reasonable. And the case law in this particular circuit seems to corroborate that and stand for that proposition. The Cass v. City of Dayton case is certainly analogous and certainly tells us that that use of force was objectively reasonable. Williams v. City of Grosse Pointe Park, which was also decided by this court, is an analogous situation which would establish that the use of force by David Bird in this situation was objectively reasonable. So the case law that's out there says that in these particular situations he can use deadly force to subdue a resistant subject. There's only one interpretation of the case law. The case law, because an officer can put himself in harm's way to stop a vehicle, doesn't mean that an officer can put himself in harm's way when he didn't have to and then use deadly force after the officer was not in harm's way but put himself in harm's way and uses that as an excuse to use deadly force. I don't think the case law says that. And I don't think that this record supports any suggestion that David Bird put himself in harm's way. He was doing his job by confronting and talking with Michael Gaddawa during the course of this initial stop. You can tell from the video that he was calm, he was professional, he was asking appropriate questions. It was Michael Gaddawa who put David Bird in the public in harm's way when he decided to back that car out of that spot after he'd been told to stop. I understand that this is an emotional situation, but looking at the gram factors and looking at the severity of the crime that Officer Bird was confronted with, he had a report of underage drinking, correct? Correct. And I believe the record doesn't say that when Officer Bird approached Mr. Gaddawa that he made an initial determination that he was drunk, correct? He had been drinking. He made it correct. He had not made an assessment yet that he was intoxicated. He was going to that step about asking to do a field sobriety test. And so you're not alleging that when Mr. Gaddawa backed the car out and struck the bike that that was the attempt to harm Officer Bird, are you? I'm saying that at the time, as I understand the case law, Judge, it's the reasonableness of use of the force, and we're talking about the severity of the crime, it's what happened at the time they decided to fire the shot. But striking the bike didn't create the circumstance that allowed the officer to use deadly force, right? I don't believe it did at that point. Okay, but then he positioned himself, as you agreed, in front of the car and yelled several times to stop. With his gun drawn. Right, but the car had passed him when they had been in contact, and Officer Bird was at the rear to the side of the car when he actually fired the shots, was he not? Correct. The evidence reflects that when he was struck by the vehicle, he rolled off, he then, in a split second, fired that single shot. It entered through the rear passenger window and then went to and underneath the right shoulder of Michael Gaddawa and lodged in his lung. So why wouldn't that circumstance amount to Officer Bird creating the situation that allowed him to, in his mind, use deadly force? He didn't create the situation, Judge, because it was Michael Gaddawa who decided to ignore the officer's orders, who had already backed over a bike, who had already almost hit Officer Bird, and who was deciding to flee a lawful order to stop. So I believe that to be the answer to that particular question. And case law seems to say, under similar situations, that this court has said that that use of force in these situations is objectively reasonable. At a minimum, at a minimum, applying the Qualified Immunity Test, this is an excellent case where Qualified Immunity should apply to protect this officer from making a split-second decision in a rapidly evolving, quick circumstances. From the time that Michael Gaddawa backed out of that car until the time the shot was fired and he left, you're talking about 15 to 20 seconds. And the car was traveling at, what, 7 to 10 miles an hour? Well, obviously, when it initially accelerates, it's not moving as fast as when it gets out onto the road. But you can see from the video that the acceleration continued from the time that he first hit the gas pedal, and then when he's leaving the finish line lot, he's taking off down that highway. Okay, so he's pulling out on the road. I mean, doesn't it have to be true, in order for you to win, that the officer had reason to think that Mr. Gaddawa posed a potentially deadly threat to people around him on the road? To him and to anybody who might be in the area. And the video evidence reflects that there were bystanders outside of that finish line bar at the time and that there were cars on the highway. Okay, so, I mean, let's set aside the bystanders because, to my knowledge, they're nowhere near the path of the vehicle. It really boils down to, based on the events that occur in the parking lot, does the officer have reason to think, as opposed to being extremely angry that this guy won't stop and just clip them with the car, does the officer have reason to think that Gaddawa is going to pose some kind of potentially lethal threat to other drivers as he pulls out? Correct. In fact, in light of what he had just experienced in that minute or minute and a half encounter with him from the time he first talked to him, he did have a reasonable belief that Michael Gaddawa could pose a threat. He also had a reasonable belief. How would that threat manifest? I mean, I don't want to, you know, deconstruct it too much, but he's a reckless person, I guess, and he had a beer. Reckless, potentially dangerous at this point? Again, what had Officer Byrd just experienced and seen? He had a man who he had backed out of the spot during the course of a traffic stop. He had told him to stop. He ignored those commands. He ran over his bike. He almost hit him. He doesn't know at this point that he fired the shot. At the point he fired the shot, from the perspective of an officer, he doesn't know, hey, what is this guy going to do? Is this guy going to come back and back up? Does this guy have a weapon in his vehicle in light of his behavior? He doesn't know any of those factors. And I think that all weighs in, and the district court correctly acknowledged that that's the type of situation where an officer can use deadly force. We all agree that the loss of Michael Godawa's life is tragic, but from the perspective of a reasonable officer on the scene, his conduct was objectively reasonable. I'll ask you the converse of the question I asked Mr. Roach. If looking at the video, we think that it's actually not so clear-cut that he strikes the officer as opposed to the officer sort of leaning into the vehicle as it goes by, it seems like your position kind of falls apart and it goes to a jury. Would you agree with that? I know you don't agree that we should view the video that way, but if we think the video is not so clear, just as Mr. Roach agreed, that if it is clear that the car strikes the officer without the officer's fault, if we see it otherwise, then a jury could say it might be the officer's fault for the contact, that the officer leaned in when we put it that way. Would you agree that your position becomes untenable at that point? No, because we've also got the testimony of Officer Byrd, and the video is what the video is, and they don't have any other evidence. I don't understand how testimony, in a case that comes to us in summary judgment, the jury might totally disbelieve that testimony. How does testimony get you judgment as a matter of law? Testimony is evidence. They've got to show... But it's evidence that the jury is completely entitled to not believe. Correct. They could not believe it, but... It's like the plaintiff saying, the defendant doesn't have testimony to counter my own self-serving testimony, so I win. That's not the way it works. I believe that they've got to produce some affirmative evidence to show that the use of force in this particular situation was not justified, or that some affirmative evidence that David did something that he shouldn't have done as a police officer that would not justify the use of that lethal force, and they don't have that. You've got the circuit's case, the Smith v. Cupp case from 2005. Well, this circuit said that the use of lethal force in a case where a drunk driver is attempting to flee is not justified absent, I guess, some other circumstances. So how do you get around that? I think the case is factually distinguishable and quite different, Your Honor. In Smith v. Cupp, you had a person who was arrested and in custody. The officer was out of the cruiser. The suspect managed to get out of his cuffs, get in the car, and take off in the cruiser. The officer wasn't in the zone of danger. He wasn't at risk at that point, and he fired a shot at basically someone who was fleeing. That's a totally different case than what we've got here. I think this case is more analogous to a later case from this circuit, Williams v. City of Grosse Pointe Park, in which an officer had stuck a gun in the car. The guy backed out. Then after he fell down to the ground, the officer fell to the ground. The guy takes off. At that point, he fires the fatal shots, rendering the suspect in that case quadriplegic. The court said that was an objectively reasonable use of deadly force in that situation, and that case was decided in 2007 after the Smith v. Cupp case. You've also got Supreme Court precedent that would support, at a minimum, qualified immunity for David Byrd in this case. Rousseau v. Hogan. You've got the Plumoff v. Ricard case, which the Supreme Court decided last year, in which they held, in that particular case, when the officers fired three shots initially, then 12 more shots as the suspect was fleeing, that the officers in that particular case were entitled to qualified immunity. They have not cited it. It was their burden. That came after a car chase in that case, right? Plumoff. That was the car chase. They get in the parking lot. He tries to leave after he gets engaged with the bumper. Three shots are fired. Then he takes off, and they fire 12 more. We've also got Hocker v. City of Pikeville, which was decided by this court in 2013, which would also lend support to the fact that the use of force in this case was objectively reasonable, or at a minimum, that David Byrd was entitled to qualified immunity. In this particular case, the estate had the burden to overcome the qualified immunity defense by citing clearly established law that would tell every reasonable officer in David Byrd's position that what he was doing was unlawful, and the challenge to them they did not meet. They did not cite that case law. For those reasons, we'd ask this court to uphold the district court's summary judgment. Thank you. Thank you. So just three quick points as far as the other factual issues which Mr. Mando had brought up. There was a point in time where the gun was drawn, and he was ordered to stop. There's stop, stop, stop. At the same time, you can see in the lapel cam that there is a light that's illuminating Michael's face. And so it's our position that at the time that he has his gun pointed out, I'm telling him to stop, that there's a good chance Michael could not have even seen the gun at all. The loud crash in the microphone, it's like anything else. You take a microphone, you tap it, you're going to hear a loud noise, whether it's an actual loud crash or it's his arm or even a fold of clothing going over the microphone. I think that that's still a, you know, I don't think it's necessarily a strong piece of evidence that lends in favor to the appellee. And at the same time, Officer Byrd, the appellee's arguing that they are concerned about the public, the motoring public, but at the same time, he's shooting at an angle towards the same highway that he's afraid that Michael might get into a wreck with somebody potentially later on down the road. And then there was, and I guess just the final point is that the evidence that's contrary to David Byrd's testimony, can it match up with Officer Byrd's testimony? Yes, absolutely it can. But at the same time, it can also be inferred to be not what Officer Byrd is saying. And I think that that's the important part. And the inference is a reasonable inference from those videos, from the lapel cam and from the surveillance video. And that's all I have, unless you have any questions. Apparently not. Thank you. Thank you very much. And the case is submitted. You may call the next case.